**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | * | |
| **RUTH PAULETTE BRUNNER and** | * | **CHAPTER 7** |
| **MILTON JAMES BRUNNER,** | * | |
| Debtors | * | |
| | * | **CASE NO.: 1-07-bk-02590MDF** |
| **LEWIS A. STRAW,** | * | |
| Movant | * | |
| | * | |
| v. | * | |
| | * | |
| **RUTH PAULETTE BRUNNER and** | * | |
| **MILTON JAMES BRUNNER,** | * | |
| Defendants | * | |

## OPINION

### Procedural History

Ruth Paulette Brunner and Milton James Brunner ("Debtors") filed the instant Chapter 7

bankruptcy case on August 20, 2007. On schedule "D," Debtors listed Lewis A. Straw ("Straw")

as a secured creditor holding a disputed judgment lien.[1]

On September 18, 2007, Straw filed a motion under 11 U.S.C. § 362(d) seeking relief

from the stay so that he could enforce a security interest that he allegedly held in Debtors' 2005

Ford Freestyle. Debtors timely filed an answer to Straw's motion in which they denied that

Straw held a bona fide security interest. They admitted that Straw provided $32,000.00 to enable

---

[1]Schedule "D" stated that Straw had a judgment lien of $12, 464.46 secured by "all of the property listed on the Sheriff's bill of sale and attached hereto." While no Sheriff's bill was attached to the schedules, this omission has no impact on the issue before me. Straw also was listed as a general unsecured creditor in an unspecified amount.

them to purchase the vehicle, but they claimed that the funds were a gift.[2]  A hearing was held, briefs have been filed and the matter is ready for decision.[3]

## Findings of Fact

On May 8, 2001, Debtors acquired title to a 1999 Ford Windstar for a base price of $16,603.30.   In exchange for a credit of $2,300.00, Debtors traded in a 1986 Chevrolet Blazer that was titled to James Brunner.  The remainder of the purchase price was paid by Straw, who recorded a lien against the Windstar. Straw never demanded and Debtors never repaid the funds he advanced to enable them to purchase the vehicle.

On June 16, 2005, Debtors purchased  a 2005 Ford Freestyle for a base price of $32,200.00.  They traded in their Windstar for a credit of $5,000.00 and the balance of the purchase price was again paid by Straw.  Debtors are listed on the title as the owners of the vehicle, but Straw has possession of the certificate of title on which he is listed as the first lien holder.  Straw testified that the notation on the title naming him as a lien holder was made "to protect my interest in the vehicle, the monetary value that I put on there, and also that the other creditors would not come in and take it. I didn't want to lose my investment." (N.T. 40).  Debtors did not enter into a written agreement to repay Straw or to give him an interest in the Freestyle.

Debtors' primary source of income is Mr. Brunner's monthly Social Security disability payment of $1,149.00.  Mrs. Brunner is not employed.  Straw financed the purchase of the Windstar in 2001 and the Freestyle in 2005 because of Debtors' poor health and financial

---

[2]Debtor Ruth Brunner is Straw's step-daughter.

[3]I have core jurisdiction to hear this matter pursuant to 28 U.S.C. §157(b)(2)(G).  This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052, which is applicable to contested matters pursuant to Rule 9014.

2

situation. Debtors asserted that they considered the purchase of the Freestyle to be a gift. Straw testified that he was aware that Mr. Brunner was expecting a recovery from a lawsuit and that he anticipated that Debtors would reimburse him when the settlement was received. Mr. Brunner denied that he agreed to repay Straw from the proceeds of the lawsuit and affirmed his wife's testimony that the funds provided by Straw were considered to be a gift. When the settlement check was received no funds were paid to Straw.

## Discussion

In relevant part, 11 U.S.C. § 362(d) provides that a party in interest may obtain relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). A "party in interest" is determined on an individual basis by examining the interest asserted and how the interest is affected by the automatic stay. *In re Vieland* 41 B.R. 134, 138 (Bankr. Ohio 1984). "Generally, the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *In re Comcoach Corp.,* 698 F.2d 571, 573 (2d Cir. 1983)(citations and internal quotations omitted.)

As a threshold matter, a party seeking relief from the automatic stay to exercise its rights in property must first demonstrate that it holds an interest in the property. *In re Maisel*, 378 B.R. 19, 21 (Bankr. D. Mass. 2007). Thus, before I can consider whether the stay should be lifted, I first must determine whether Straw has a colorable interest in the Freestyle. To resolve this issue, I must look to relevant state law. *Butner v. United States,* 440 U.S. 48, 54-55, 99 S. Ct. 914, 918-19, 59 L.Ed.2d 136 (1979) (state law defines property interests); *In re SubMicron*

3

*Systems Corp.,* 432 F.3d 448, 458, (3d Cir.2006) (state law determines whether claims asserted by creditors in bankruptcy are secured).

"A valid inter vivos gift requires both donative intent and delivery." *In re Estate of Korn*, 332 Pa. Superior Ct. 154, 162, 480 A.2d 1233, 1237 (1984) *citing Wagner v. Wagner*, 466 Pa. 532, 353 A.2d 819 (1976). When parties are related, an intent to make a gift may be inferred by the actions of the donor. *Brightbill v. Boeshore*, 385 Pa. 69, 76, 122 A.2d 38, 42 (1956) (a voluntary delivery without explanation between a father and daughter can be assumed to be a gift). The donee bears the initial burden of proving by clear and convincing evidence that a transfer is a gift. *Lanning v. West*, 803 A.2d 753, 760 (Pa. Superior Ct. 2002); *see also In re Estate of Pappas*, 428 Pa. 540, 542, 239 A.2d 298, 300 (1968).

Straw provided the funds necessary for Debtors to obtain the Freestyle and title to the vehicle was placed in the name of James and Ruth Brunner. But Debtors did not retain possession of the certificate of title, and Straw took steps to protect his "claim" to the vehicle by ensuring that his name was recorded as a lien creditor. I find credible Straw's testimony that he recorded his interest as a lien creditor intending to protect his "interest" in the vehicle. Accordingly, I find that Debtors have failed to meet their burden to establish that the funds used to purchase the Freestyle were intended as a gift.

Having established that the funds provided by Straw were not a gift, I must determine whether Straw's claim against Debtors is secured by the Freestyle or is a general, unsecured claim. Straw contends that a valid security interest was created by the notation on the title naming him as a first lienholder. Debtors respond that under the Uniform Commercial Code

4

("UCC"), a security interest in the Freestyle was never created because Debtors never signed a writing of any kind to create a security interest. *See* 13 Pa. C.S.A. 9203(b). While Straw's brief fails to cite to authority for his position, one Pennsylvania county court decision appears to be on point. In *In re Mertz' Estate*, 24 Pa. D.&C. 2d 755, 1961 WL 8695 (1961), a creditor of a decedent's estate sought to obtain possession of a 1950 Dodge truck based solely on a lien notation on the title certificate. Based on its reading of Section 203 of the Vehicle Code of May 1, 1929, P.L. 905, 75 P.S. § 203 ("Section 203"),[4] the court granted judgment to the creditor, holding that "[t]he certificate of title with the encumbrance noted thereon is itself evidence of the security agreement. Debtor must have contemplated a security interest when he permitted the certificate of title to be marked with an encumbrance." *Id.* Section 203 of the Vehicle Code of 1929 has been repealed, and so its applicability is questionable. Further, the facts of *Mertz Estate* differ significantly from the instant facts because the creditor in *Mertz* possessed a writing signed by the decedent acknowledging the existence of an encumbrance. In the instant case,

---

[4]In relevant part, Section 203 provided that:

(a) A certificate of title shall contain such description and other evidence of identification of the motor vehicle, trailer or semi-trailer for which it is issued as the secretary may deem necessary, together with a statement of any liens or encumbrances which the applicant may show to be thereon, together with the names and addresses of the holder or holders of any such liens or encumbrances.

(b) The outstanding certificate of title, when issued by the secretary showing a lien or encumbrance, shall be adequate notice to the Commonwealth, creditors, subsequent mortgagees, lienors, encumbrancers and purchasers that a lien against the motor vehicle, trailer or semi-trailer exists, and failure to transfer possession of the vehicle, trailer or semi-trailer shall not invalidate said lien or encumbrance.

75 P.S. § 203, repealed by the Act of April 29, 1959, P.L. 58.

Straw has no document *signed by the Debtors* in which they acknowledge the existence of a security agreement. *But see Mellon National Bank & Trust Co. v. Cabin*, 177 Pa. Super. 417, 110 A.2d 888 (1955) (oral pledge acknowledged by debtor was sufficient, along with encumbrance officially noted on title, to create a lien under Section 203). I have uncovered no Pennsylvania case wherein a court found that a security interest had been created solely by a notation on a title when the debtor disputed the existence of an oral pledge or security agreement.

Most relevant, Pennsylvania has adopted the Uniform Commercial Code requirements for the creation of a security interest. Pennsylvania law provides that "a security interest is enforceable against the debtor . . . with respect to the collateral only if all of the following apply:

(1) Value has been given.
(2) The debtor has rights in the collateral . . . . [and]
(3) . . .
> (i) The debtor has authenticated a security agreement which provides a description of the collateral. . . ."

13 Pa. C.S.A. § 9203(b). Under Pennsylvania's Commercial Code, a security interest does not attach unless the debtor signs a security agreement that contains a description of the collateral. *In re Price*, 366 B.R. 389, 394 (Bankr. M.D. Pa. 2007) *citing* 13 Pa.C.S.A. § 9203(b); *Matter of Tressler,* 771 F.2d 791 (3d Cir.1985); *Kendrick v. Headwaters Production Credit Association,* 362 Pa. Superior Ct. 1, 523 A.2d 395 (1987). More specifically, Pennsylvania appellate courts have found that Section 9203(b) is applicable to security interests created in connection with the sale of motor vehicles. *See Chambersburg Trust Co. v. Eichelberger*, 403 Pa. Super. 199, 588 A.2d 549 (1991); *Industrial Valley Bank and Trust Co. v. Nash*, 349 Pa. Superior Ct. 27, 502 A.2d 1254 (1985). *Accord First National Bank of Arizona v. Carbajal*, 132 Ariz 263, 267, 645

P.2d 778, 782 (Ariz. 1982) (security interest in motor vehicle does not attach under UCC 9-203 [13 Pa.C.S.A. § 9203(b)] unless there is a writing signed by debtor or creditor retains possession of vehicle). Attachment is a precondition to perfection. Therefore, the notation on the certificate of title in the within case was insufficient to create a perfected security interest. Because Debtors never executed a security agreement, no security interest attached to the Freestyle, thus Straw possessed no interest in the Freestyle to perfect.

Because Straw is not a secured creditor and, therefore, is not a party in interest under 11 U.S.C. § 362(d)(2), he is not entitled to the relief sought in the instant motion. Accordingly, the motion will be denied.

An appropriate order will be entered.

By the Court,

Mary D. France
Bankruptcy Judge

Date: April 9, 2008

*This document is electronically signed and filed on the same date.*

7